IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SKY-MED, INC., a Hawaii corporation, dba PACIFIC SKYDIVING HAWAII,<br><br>                Plaintiff,<br><br>        vs.<br><br>SKYDIVING SCHOOL, INC., a Hawaii corporation, dba SKYDIVE HAWAII,<br><br>                Defendants. | CIVIL NO. 13-00193 DKW/BMK<br><br>ORDER DENYING DEFENDANT SKYDIVING SCHOOL, INC.'S APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY |

ORDER DENYING DEFENDANT SKYDIVING SCHOOL, INC.'S
APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER
AND MOTION FOR EXPEDITED DISCOVERY

**INTRODUCTION**

Before the Court is Defendant Skydiving School, Inc., doing business as Skydive Hawaii's ("Defendant" or "Skydiving School") Application for Issuance of Temporary Restraining Order ("Application for TRO"). Skydiving School seeks a TRO preventing Plaintiff Sky-Med, Inc., doing business as Pacific Skydiving Hawaii ("Plaintiff" or "Sky-Med"), and Third-Party Defendants Guy

1

Banal, Gemmalyn O'Connor, C. Phillip Holstein, Jr., Phillipe Tassin, and New Nectar Media LLC from infringing on its mark SKYDIVE HAWAII. The court held a hearing on the Application for TRO on June 21, 2013. After careful consideration of the supporting and opposing memoranda, the arguments of counsel, and the relevant legal authority, the Application for TRO is HEREBY DENIED.

## BACKGROUND

Sky-Med and Skydiving School run competing businesses offering skydiving instruction and equipment, and transportation of skydivers to jump altitudes. Both operate out of the same geographical jump zone area at Dillingham Airfield on the island of Oʻahu. The principals of these two businesses were previously involved in joint business ventures, but are now direct competitors. Third-Party Defendants Banal, O'Connor, and Holstein are officers and directors of Sky-Med; Tassin manages New Nectar Media LLC, which provided website design and marketing to Sky-Med.

Sky-Med has operated under the trade name Pacific International Skydiving Center from the time of its formation in 1997, and has used the trade name Pacific Skydiving Center as an abbreviation since approximately 1998. In 2007, Sky-Med began using the name Pacific Skydiving as a further abbreviation.

In late 2010, Tassin, acting as Sky-Med's technology consultant, recommended identifying Sky-Med's geographic location by adding the word "Hawaii" to the trade name Pacific Skydiving in order to improve visibility to visitors to Hawai'i. By early 2011, Sky-Med began using the internet domain name "www.pacificskydivinghawaii.com" and the name "Pacific Skydiving Hawaii" on its website.  *See* Decl. of Guy Banal ("Banal Decl.") at ¶¶ 45-56.

According to Skydiving School's president Frank Hinshaw, Skydiving School and its predecessors have owned the rights to and have continually used the SKYDIVE HAWAII mark since 1984.  He registered the mark as a trade name with the State Department of Commerce and Consumer Affairs ("DCCA") in 1994 and 2005, and owns eight federal trademark registrations and two Hawai'i state trademark registrations.  *See* Decl. of Frank Hinshaw ("Hinshaw Decl.") at ¶¶ 8-13, 36.  Hinshaw claims that in 2004, Sky-Med began to use "Hawaii" in its trade name and its internet domain names, and as a result, Skydiving School "during the years of 2004-2006, saw its revenues decrease, and saw its margin of sales over [Sky-Med] decrease from a 2 to 1 margin to only a 1/3 difference as [Sky-Med] began to use the name Skydive and Hawaii in their marketing efforts."  *Id.* at ¶ 41.  He contends that Skydiving

School's loss of income was a direct result of Sky-Med using the phrase "Skydive Hawaii" in its sales efforts.  *Id.* at ¶ 42.

Sky-Med filed a complaint for declaratory relief on April 24, 2013. On May 15, 2013, Skydiving School filed its counterclaim and the instant Application for TRO.  It asks the court to enjoin Sky-Med and Third-Party Defendants from making any use of the mark SKYDIVE HAWAII, the name Pacific Skydiving Hawaii, and the domain name "pacificskydivinghawaii.com," and for the court to order expedited discovery.

## **STANDARD OF REVIEW**

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  *See, e.g.*, *Hawaii v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that analysis for a preliminary injunction is "substantially identical" to analysis for a temporary restraining order).

A preliminary injunction is an extraordinary and drastic remedy never awarded as of right.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  A party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *accord Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). *Winter* emphasized that plaintiffs seeking preliminary relief must demonstrate that "irreparable injury is likely in the absence of an injunction." 555 U.S. at 22; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

## DISCUSSION

### I.   Likelihood of Success

#### A.   Trademark Infringement

To prevail on a claim for infringement of a federally registered trademark under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), Skydiving School must establish (1) that it has a federally registered mark that is valid and protectable, and (2) Sky-Med's use of a colorable imitation in commerce without Skydiving School's consent in a manner that is likely to cause confusion as to the

5

source, affiliation, connection or association of its services.  *See Karl Storz Endoscopy−Am., Inc. v. Surgical Techs., Inc.,* 285 F.3d 848, 853−54 (9th Cir. 2002).

The parties dispute whether Skydiving School acquired a protectable mark through its registration.  The court, however, need not resolve this dispute at this time because the court finds that Skydiving School fails to show a sufficient likelihood of success on the issue of confusion.  Skydiving School has the burden to demonstrate that Sky-Med's use of its mark creates a likelihood of confusion. *See KP Permanent Make−Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 112 (2004) ("Section 1115(b) places a burden of proving likelihood of confusion (that is, infringement) on the party charging infringement even when relying on an incontestable registration.").

The Ninth Circuit has set forth the following standard for demonstrating a likelihood of confusion:

> To determine whether there is a likelihood of confusion between the parties' allegedly related goods and services, we consider the following eight [*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348−49 (9th Cir. 1979) ("*Sleekcraft*")] factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in

selecting the mark; and (8) likelihood of expansion of the product lines.

*M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005) (citation omitted). "The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005). In essence, "[t]he test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Skydiving School's state law infringement and unfair competition claims are governed by a "likelihood of confusion" standard identical to the *Sleekcraft* test. *See Surfvivor Media, Inc.*, 406 F.3d at 635.

The similarity of the marks is a critical question in the analysis. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). "[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." *Id.* at 1206. The Ninth Circuit has developed several axioms to guide the similarity analysis: (1) "the marks must be considered in their entirety and as they appear in the marketplace;" (2) "similarity is adjudged in terms of appearance, sound, and meaning;" and (3) "similarities are weighed more heavily

than differences." *Id.* (citations omitted). Here, the mark SKYDIVE HAWAII is not identical to "Pacific Skydiving Hawaii," or the internet domain name "www.pacificskydivinghawaii.com." There are similar or common terms as both companies include the location of the service provided (Hawaii), and the activity (skydive or skydiving). These terms, however, are largely descriptive. *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998) ("*Descriptive marks* define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." (citations omitted)). Skydiving School does not have an exclusive right to use these words describing the location and activity, which appear to be common in the industry. *See SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 846 F. Supp. 2d 1063, 1078 (N.D. Cal. 2012) (Observing that, in cases "where that shared word is a common one in the industry, the plaintiff is not permitted to claim right to all variants on it."); *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 27 (1st Cir. 2008) ("To the extent any similarity exists between the composite marks, that similarity is a result of each party's decision to use a generic phrase to describe its product."). Further, the mark does not include the additional word "Pacific." *See, e.g.*, *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1145 (9th Cir. 2002) (finding that between the publications "Entrepeneur" and

"Entrepenuer Illustrated," the additional word is a "noticeable" difference); *id.* at 1147 ("Similarity of marks or lack thereof are context-specific concepts. In the Internet context, consumers are aware that domain names for different Web sites are quite often similar, because of the need for language economy, and that very small differences matter."). Examining the terms in their relative entirety, the court finds that this factor does not weigh in favor of Skydiving School.

"Evidence of actual confusion by consumers is strong evidence of likelihood of confusion." *Surfvivor Media, Inc.*, 406 F.3d at 633. Courts considering this factor often determine "whether merchants and non-purchasing members of the public, as well as actual consumers, were confused." *Id.* Skydiving School presents evidence of purported actual confusion by one-time customers who it contends represent the relevant consuming market. For example, Madelyn Burr contacted Skydiving School in May 2013, complaining of an injury she received during a tandem skydive on October 27, 2012 at Dillingham Airfield. Ms. Burr did not dive with Skydiving School, but apparently, dove with Sky-Med on that date, and when she realized that she had contacted the wrong operator, she told Frank Hinshaw, "I'm very sorry for the confusion as the two company names are very similar." Suppl. Decl. of Frank Hinshaw ("Suppl. Hinshaw Decl.") at ¶¶ 2-11; Exh. 4 (6/2/13 Email from Burr), at 8. Skydiving

9

School also asserts that it is common for customers or potential customers to try to board its van or to arrive at its office thinking that they had booked reservations with Skydiving School, when in reality, they had likely booked with Sky-Med. *See* Decl. of Sanitoa Vaoifi at ¶¶ 8-17, 21.  As Sky-Med notes, however, the reason for confusion between some customers appears to be due in part to the two companies' physical proximity at Dillingham Airfield – only 200 feet apart – and because they are the only providers of these services in the state, not because of any confusion with company names.  Indeed, Sky-Med has offered several declarations from experienced skydivers, actual customers of both parties, stating that there is no name confusion among the initiated.  *See* Decl. of Robert Sammis ("Sammis Decl.") at ¶¶ 21-23; Decl. of Randy Pacheco ("Pacheco Decl.") at ¶¶ 10-13; Decl. of Tom Sanders ("Sanders Decl.") at ¶ 11.

As to the strength of the mark, the parties dispute whether SKYDIVE HAWAII is "famous."  "The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Brookfield Commc'ns v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999).  The Ninth Circuit utilizes a two-prong test to determine the strength of a particular mark.  Both the conceptual strength and the commercial strength of a mark are considered.  *See*

Case 1:13-cv-00193-DKW-BMK   Document 37   Filed 07/02/13   Page 11 of 18     PageID #: 744

*GoTo.com*, 202 F.3d at 1207.  "Conceptual strength involves classification of a mark 'along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful.'"  *Network Automation*, 638 F.3d at 1149 (quoting *Brookfield*, 174 F.3d at 1058).  "The strength of a mark is determined by its placement on a continuum of marks from generic, afforded no protection; through descriptive or suggestive, given moderate protection; to arbitrary or fanciful awarded maximum protection."  *E. & J. Gallo Winery v. Gallo Cattle*, 967 F.2d at 1291 (9th Cir. 1992) (citation and quotation marks omitted). Here, the mark describes the activity (skydiving) and the general geographic location (Hawai'i).  As used, these terms are generic or descriptive.  *See Kendall-Jackson Winery, Ltd.*, 150 F.3d at 1047 n.8 ("*Generic marks* give the general name of the product; they embrace an entire class of products. . . . *Descriptive marks* define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." (citations omitted)).  Moreover, there is conflicting evidence regarding the commercial strength of the mark inside and outside of Hawai'i.  *See, e.g.*, Hinshaw Decl. at ¶¶ 25, 32, 37; Sammis Decl. at ¶¶ 24, 25.  On balance, this factor weighs against a finding of a likelihood of confusion.

With respect to Sky-Med's intent in selecting its trade name and internet domain name, there is conflicting evidence as to whether it intended to create confusion. Banal expressly disavows any such intent and asserts that he specifically instructed his media advisors not to use any term that might be too similar to Defendant's mark. Banal Decl. at ¶¶ 36-37; *cf.* Decl. of Atsushi Yamanaka at ¶¶ 9-11. It appears that Sky-Med's decision was influenced, in part, by Tassin's recommendation to implement search engine optimization best practices to improve the ranking of Sky-Med's website on internet search engines. Tassin recommended the use of geolocators, and attempted to register the phrase "skydive in Hawaii" as a trademark/service mark, without informing Banal. When he later informed Banal that he was considering using the term in Sky-Med's internet marketing, Banal told him not to use it because it was too close to the name of his competitor. Tassin then abandoned the application for the "skydive in Hawaii" trademark, which Tassin and Banal claim to have never employed. Decl. of Phillipe Tassin at ¶¶ 5-11. The court finds that this factor does not weigh in favor of a likelihood of confusion.

As to the remaining factors, there is no dispute that the services offered by the companies are related, and sold to the same class of purchasers. "Related goods are generally more likely than unrelated goods to confuse the

public as to the producers of the goods." *Brookfield Commc'ns*, 174 F.3d at 1055-56. Nor do the parties dispute that both market their services via the internet to a similar demographic. *See Network Automation v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) ("Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion.").

In sum, while the court finds that some of the *Sleekcraft* factors point to a likelihood of confusion, the weight of the preliminary evidence as a whole demonstrates that the likelihood of confusion is not sufficiently strong to grant the extraordinary relief requested.

    **B.**    **<u>False Designation of Origin</u>**

To prevail on claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must prove essentially the same elements as for federal trademark infringement. *Brookfield Commc'ns*, 174 F.3d at 1047 n.8 (analysis under Section 32 and 43 of the Lanham Act is the same); *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1997) (same test for unfair competition and false designation of origin). Skydiving School must show a likelihood of consumer confusion, which is analyzed using the same factors for trademark infringement. *Thane Int'l v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th

Cir. 2002) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)), *superseded by statute on other grounds*, 15 U.S.C. § 1125, as recognized in *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158 (9th Cir. 2011). For the same reasons discussed above, the court finds that Skydiving School has not met its burden to show a sufficient likelihood of consumer confusion at this time.

### C. Cybersquatting

Skydiving School alleges that Sky-Med's domain name, "www.pacificskydivinghawaii.com" is confusingly similar to its own domain names "www.skydivehawaii.com" and "www.skydivinghawaii.com," and that Sky-Med is in violation of the Anticybersquatting Protection Act ("ACPA"), 15 U.S.C. § 1125(d). To prevail on this claim, Skydiving School must prove that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with 'bad faith intent to profit from that mark.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)). The ACPA sets forth factors to determine bad faith, *see* 15 U.S.C. § 1125(d)(1)(B)(i), but these factors are not "an exclusive list." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946–47 (9th Cir.

2002). The ACPA also contains a safe harbor provision, precluding a finding of bad faith "in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii).

Although these issues have not been extensively briefed or argued, the court finds at this stage that Skydiving School has not met its burden of showing a likelihood of success on the merits of its cybersquatting claim both because the domain names at issue are not confusingly similar and because there is insufficient evidence of Sky-Med's bad faith.[1]

## II. Irreparable Harm

Skydiving School must demonstrate that irreparable harm is *likely,* not just possible.  *Winter,* 555 U.S. at 22.  Courts do not presume irreparable harm in intellectual property cases, nor would Skydiving School be entitled to such a presumption here because it has not demonstrated a high likelihood of success on the merits.  *See eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 392-93 (2006)

---

[1] Although Skydiving School's cybersquatting claim may also relate to the previous use of other domain names by Sky-Med ("www.skydivereservationshawaii.com" and "www.hawaiiskydivereservations.com"), the uncontroverted evidence shows that Sky-Med does not presently use these domain names and perhaps never did, and that these two names remain open for registration by the general public.  Hinshaw Decl. at ¶¶ 43-45; Banal Decl. at ¶¶ 50-53; Tassin Decl. at ¶ 22.

(rejecting invitation to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed); *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,* 654 F.3d 989, 998 (9th Cir. 2011) ("[E]ven in a copyright infringement case, the plaintiff must demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief, whether preliminary or permanent."); *AFL Telecommunications LLC v. SurplusEQ.com, Inc.*, 2011 WL 4102214, at *3 (D. Ariz. Sept. 14, 2011) ("Irreparable harm is no longer presumed in a trademark or copyright case upon a showing of a likelihood of success on the merits.").[2]

Although injury to goodwill and business reputation, as alleged by Skydiving School, are generally considered to be intangible and, as a result, irreparable, *cf. MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered

---

[2] While the Ninth Circuit has not yet directly addressed the effect of *Winter* upon the presumption of irreparable harm in the trademark infringement context, it has found that the analogous presumption in the copyright infringement context has effectively been overturned in light of *Winter* and *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). *See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 999-1000 (9th Cir. 2011) ; *Perfect 10, Inc. v. Google, Inc.,* 653 F.3d 976, 978–981 (9th Cir. 2011). District courts in this Circuit that have addressed this issue have found that the governing law has changed, and a movant is not granted the presumption of irreparable harm upon a showing of likelihood of success on the merits. *See BoomerangIt, Inc. v. ID Armor, Inc.,* 2012 WL 2368466, at *4 (N.D. Cal. June 21, 2012) (citing cases).

irreparable."), with *OG Int't, Ltd. v. Ubisoft Entm't*, 2011 WL 5079552, at *10 (N.D. Cal. Oct. 26, 2011) ("The fact that alleged harm is primarily in the form of lost customers and business goodwill, which at least in theory may be compensated by damages, weighs against a claim of irreparable harm." (citation and quotation marks omitted)), the evidence offered in support of such injury has thus far been scant and speculative, and therefore insufficient to carry Skydiving School's burden of demonstrating real and imminent irreparable harm.

## III. Other Factors

The court further finds that Skydiving School has not demonstrated that the balance of hardships tips in its favor or that an injunction is in the public interest.

## CONCLUSION

On the basis of the foregoing, Defendant Skydiving School, Inc.'s Application for Issuance of Temporary Restraining Order is HEREBY DENIED.

// //

// //

// //

// //

Skydiving School's request for expedited discovery is also DENIED, as Defendant offered no facts, arguments or authority in support of the request.

    IT IS SO ORDERED.

    DATED: HONOLULU, HAWAI'I, July 2, 2013.



    /s/ Derrick K. Watson
    Derrick K. Watson
    United States District Judge

---

Sky-Med v. Skydiving School, Inc.; CV 13-00193 DKW/BMK; ORDER DENYING DEFENDANT SKYDIVING SCHOOL, INC.'S APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY